This morning is 17-1703 Blackbird Tech v. ELB Electronics This morning is 17-1703 Blackbird Tech v. ELB Electronics Ready to go, Mr. Thompson. Thank you, Your Honor. May it please the Court. My name is Sean Thompson, and I represent Blackbird Technologies. Claim 12 of the 747 patent recites a lighting apparatus that is for retrofit with a lighting fixture that has a ballast cover. Now, a ballast is simply a component in the fixture that controls the flow of electricity to the bulb, and a ballast cover is literally just a cover over that component of the fixture. As a special matter, this case has to get vacated and remanded because of awful products on the burden issue, correct? Do I have this case mixed up with the other one? I'm mixing this up with the other case, sorry. Thank you. That was concerning, Your Honor. Why didn't I get one of these? So, Claim 12 recites this lighting apparatus that is for retrofit with a light fixture. And the District Court construed Claim 12 to require that the lighting apparatus, a particular surface of the housing of the lighting apparatus, referred to as the attachment surface, needed to be secured to the ballast cover of the light fixture into which the apparatus is retrofit. We submit that this construction was wrong for three reasons. First, nothing in the claim requires that the attachment surface of the apparatus be secured to the ballast cover. The claim expressly provides that the attachment surface is, in fact, secured to another component of the device, the illumination surface. And there is no language in the claim supporting a requirement that the attachment surface be secured to anything else. Second, there's nothing in the specification to support reading in a requirement that the attachment surface be secured to the ballast cover. The specification does disclose an embodiment with a device that is configured to be secured to a ballast cover in certain modes of operation. But there is no basis to limit Claim 12 to the disclosure of that embodiment. Well, it has to be secured to something, right? I think the device should be secured to something to be installed, yes. Well, to accomplish the retrofit function. Correct. Right? It has to be secured to something on the existing light fixture. So point us to anything in the specification or the intrinsic record as to what that something is other than the ballast cover. I think the device needs to be secured to the fixture into which it is being retrofit. But I don't think the claim needs to recite how it is secured into the fixture into which it is being retrofit. I think this claim is directed to the structure of the device itself. And a person of skill would understand how to install such a device into a lighting fixture. I'm sorry, I'm not following you. I thought we all agreed that it has to be secured to something on the existing light fixture. And you're just saying that we don't have to specify what that something is, that something could be anything and everything, and that doesn't make any difference to understanding the scope of these claims? I don't think it could be anything or everything. I think it would be something a person of skill would understand. A device like this would be used to retrofit into a light fixture. What would a person skilled in the art understand that something to be? I think it could be pins that fit into the housing and provide mechanical support and also electricity to the bulb. But to your point, I don't think the claim specifies that, and I don't think it has to. I think if you had a claim... Well, what about, can you point us to anything in the intrinsic record that suggests or points us to some reason to think this is something other than the ballast cover? Sure, Your Honor. I think the prosecution history in particular is germane to this point. Anything in the specification? I think the specification, I think it is the lack of things in the specification that make this point. Because the claim language, I think, is clear, that there is an attachment surface and an illumination surface of the housing, and that those two surfaces are fastened together. I think the district court in defendant's construction reads a limitation into that claim. So I think the specification is important, insofar as there is nothing in the specification supporting reading that requirement into the claim. There are two parts of the specification that I think are relevant here. The first is a paragraph in the summary of the invention section, appearing at appendix 37, column 3, lines 7 to 10. And this was the portion of the specification that the district court in particular zoomed in on, where it reads, the lighting apparatus also includes a fastening mechanism for securing the attachment surface of the lighting apparatus to the ballast cover. And this was really the basis of the district court's holding in terms of the specification. But it is clear from... The only fastening mechanism mentioned in Claim 12 is the fastening mechanism for securing the attachment surface to the illumination surface. That's the only fastening mechanism in Claim 12, correct? Correct. So whatever fastening mechanism is being referred to in Claim 3, which could be part of that particular preferred embodiment, is simply not claimed at all in Claim 12. Correct. I think that is particularly clear in light of the prosecution history because Claim 12 originally recited a fastening mechanism for securing the attachment surface of the lighting apparatus to the ballast cover. However, that specific limitation was deleted during the course of prosecution and upon amendment read, fastening mechanism for securing the attachment surface of the lighting apparatus to the ballast cover. Why was it deleted? It is not clear entirely from the record why it was deleted. The examiner's amendment that deleted it stated that it was being deleted to resolve Section 112 issues. At that point, there not have been... There were no rejections based on 112 in this record that I could find. That is correct. There were 102 and 103. There was an interview, and so presumably at that interview there was some discussion which raised some 112 concern. And by the way, we don't have any clue whether it was indefiniteness, enablement, written description. We have no clue what even the nature of the 112 concern may have been. And by the way, this district court said amendments made for non-prior art purposes can't affect the scope of a claim. That's absolutely wrong as a matter of law, right? If you have to make a narrowing amendment for 112 purposes, enablement, or written description, that absolutely affects the scope of your claim, doesn't it? We would agree with that, Your Honor, yes. And I think that's the point. There is a 102 and 103 rejection. The claim is amended for reasons that have no relation to the issue before the court today. There is an examiner's interview, and in the written summary of that interview, the examiner states that the examiner's amendment that changes the fastening mechanism limitation is being done to resolve Section 112 issues. It is not clear why those are. But it is our position as we present to the district court that it doesn't matter here why the claim was amended. We concede there is nothing in the record beyond the fact that it was amended to resolve Section 112 issues. The salient issue, though there may in fact, is that it took out the limitation that is key to this issue. There was a fastening mechanism for securing the attachment surface to the illumination surface. And we think that bears directly on how a person of skill in the art would read these claims. To return to the specification, in Column 9, there is an additional set of disclosure regarding the attachment surface, which forms not the basis for the district court's decision, but for many defendants' arguments, appearing in Appendix 40. I think it's important to note here that this entire column is directed to a single embodiment, the embodiment depicted in Figure 5. And that is an exemplary embodiment showing a lighting apparatus that is configured to be secured to a ballast cover in certain modes of operation. I would particularly direct the Court to Column 9 in... ..Lines... ..65... I'm sorry. ..Lines 17 to 20, which expressly state that it is in typical operation that the attachment surface of the device depicted in this embodiment is secured to the ballast cover. That this device is only secured to the ballast cover in typical operation necessarily means there are modes of operation in which it is not so secured. Can I just ask you, you used the words in this embodiment. Those were your words, not the words you were reading, right? Because I don't see those words in Column 9, unless I'm looking at a different citation. No, no, that is correct. But my point is the entire disclosure in Column 9 is about the embodiment of Figure 5. Right, but that's not true of the references to the ballast cover in Column 3 that we were talking about, because that's in the entire summary of the invention. Correct. And to turn back to that, it's true that that is in the summary of the invention section. But if you look at the beginning of the paragraph in which that fastening mechanism line that we were discussing earlier appears at Column 2, Line 65 on Appendix 36, it says, An energy-efficient lighting apparatus for retrofit with an existing light fixture having a ballast cover is also disclosed. And that's what this whole paragraph is about and where that fastening mechanism statement occurs in the context of. And that's very different than the language this Court has generally required to establish a disavowal, such as defendants argue, or an implied definition. It is not talking about the present invention. It is not talking about a feature that must be present in all embodiments. It's simply talking about the features of advice that are disclosed in the patent. And they are. Let me ask you a question. Paragraph 3 also talks about the circuit board composing a plurality of light-emitting diodes, right? Under the summary of the invention, it talks about the lighting apparatus also includes a circuit board comprising a plurality of light-emitting diodes. If something other than light-emitting diodes were used, that would be okay, right? Because Claim 12 doesn't expressly call for light-emitting diodes. It doesn't speak to the exact nature of the lighting source. It just says an energy-efficient lighting apparatus. So the fact that there may be some element disclosed in the summary of the invention, that does not mean that that element is incorporated into every claim, does it? I think that is exactly right. However, I would point out that Claim 12 does recite light-emitting diodes. Oh, does it? I missed that. Where is that? Oh, yeah, in the last element. Okay, my bad. But the point I was trying to make, I could probably find some other example, is that not every sentence in the summary of the invention is imported into every claim. Correct. I think that is right. Now, it would be different if it said in the present invention, or in the invention as claimed, or, you know, there are magic words that can absolutely trigger an element then being imported into claims. Correct. We agree with that. But the whole summary of the invention, we can't possibly go to a space where the whole summary of the invention is automatically imported into claims, right? I would agree with that, Your Honor. That would seem bad. I would agree. Particularly given the phrasing of this, where it is simply talking about features that are disclosed, rather than, as you said, an essential element of the present invention or any words that have been held sufficient. Finally, to return to the question that you asked initially, I'm not sure I finally was able to respond to it, as to whether some sort of attachment mechanism must be recited in the claim. I don't think that's true. I think if you had, think of it in more simple terms. If you had a light bulb, a claim directed to a light bulb, I don't think it would be necessary, a conventional light bulb that had an Edison screw mount into a lighting apparatus, say, I don't think it would be necessary that the claim recite a Edison screw mount or would be inoperable or somehow otherwise deficient. I think you're not obligated to claim every conceivable element of the device, and this claim recites a complete invention, albeit not one that specifies how it is secured into the lighting fixture. I would reserve the balance of my time. Thank you. Good afternoon, and may it please the Court. My name is John Hintz. I'm with Maynard, Cooper & Gale. With me is Co-Counsel Philip Rovner of the Potter Anderson Firm. I'd like to begin in talking about the amendment in a couple of different aspects. The first would be that the amendment makes no sense, makes no sense from a couple of different standpoints. First, there were no Section 112 rejections, as the Court has already recognized. Second, there is not a single word of support for the amendment in the specification. Counsel cannot point to anywhere where the attachment surface is shown or described as being secured to the illumination surface. No one knows why the amendment was made, but it did not have the effect of changing what the invention is. The invention is, of course, determined by the claims. When you say no one knows why the invention was made, a skilled artisan would read the prosecution history, and the examiner is the one who fills out the examiner's summary, correct? It's not even the applicant, so we can't suggest the patentee skewed this somehow. It's not the patentee's account. It's the examiner's account. Correct. And the examiner said this was made for 112 purposes. Yes. We don't know what his 112 issues were. There had been an interview, which is, of course, not transcribed or recorded, and that stinks. But he filled out that document. The examiner did. So wouldn't a skilled artisan read that and walk away with the understanding that I don't know what the examiner's 112 concerns were, but the examiner has clearly put on record in this prosecution history that he is requiring a change to these claims for 112 reasons? Yes, that is certainly what the record shows. But what we are not asking this Court to do and what we did not ask the lower court to do is undo the change. Blackbird, in their brief, points out how both parties agreed down below, all parties agreed, what fastening mechanism would mean if it wasn't a means-plus-function element. Judge Andrews ruled it was not a means-plus-function element. Therefore, the parties agreed to what this language says. Fastening mechanism is for securing the attachment surface to the illumination surface. We are not arguing that that should be undone, and the word illumination surface should be changed back to ballast cover. What we are arguing is that the retrofit aspect, that all parties agree is in the preamble and is limiting, has to be given some meaning in how this device, how this claimed invention is going to function. As chief judges, you recognize it has to attach to something. It's what Judge Andrews said as well. And if you step back and look at this from what the disclosure is, you have two disclosures for apparatus. One is where the claimed apparatus already has a ballast cover on it with all the other features. You remove the ballast cover, the existing fixture, and you replace it with the claimed apparatus. That's claim one. That's not at issue here. Claim 12 says you have this apparatus that you secure to the existing lighting apparatus. That's retrofit. How do you do that? Do you secure it with the LED bulbs pointing up to the ceiling so that they can't be visible? No. You do it the other way. You secure it by the attachment surface. That's what it's for, attaching. The lights then point downward. That's what Figure 5 shows. And we're not saying that Figure 5 is a preferred embodiment that you must incorporate into the claim. What we're saying is you look at the claim and look at the embodiments and look at the description and understand what that claim means. And we recognize that there are cases that this court have decided that say the present invention or other magic words are important. I contend that the phrase the summary of the invention or summary of the invention is an important phrase. Wait, you think that every single thing in a patent that comes after the word summary of the invention is automatically imported into a claim? No, and I'm very glad you asked me that because this patent, it is true. If Your Honor were to look at that summary, the first several paragraphs line up with claim one. The next line up with some dependent claims. The part we're looking at in column 2, line 65 to column 3, line 7 is claim 12. Everything matches. And then it goes on to the other independent and dependent claims. How in the world could I create a rule of law? Because I see lots of patents. I saw one with a summary of the invention the other day. What was it, like seven, eight pages long? It was a pro se inventor who wrote his own patent. It was a disaster. That's not typical. But summary of the invention, it can't possibly become a rule of law that simply by virtue of something being in the summary of the invention therefore has to be imported into the claim. I agree completely, Your Honor. But I'm saying in this case, those words need to be given meaning and this invention needs to be viewed from the disclosure. Why? If it's not the rule of law that having something in the summary of the invention and if all of our cases say, they point to, they don't point to the fact just that something's in the summary of the invention. They point to the fact that it's in the summary of the invention and it says the essential element is. The present invention includes. They make it clear. If all of those cases could have simply been resolved on the fact that this happened under the umbrella of the word summary of invention section, then we wouldn't have needed to go further and point out that they had very specific language which pulled that element into the claims. There's no specific language here that does that. I agree, Your Honor. And I believe patent practitioners understand that as well. And I think few and far between are they now saying words like that when they're trying to get broad disclosures. But in this case, we believe that there is nothing, first of all, that supports the construction that Blackburn is proposing. I urge you to look for something that says how the fastening mechanism secures the attachment surface to the illumination surface. The drawings don't show it. The preferred embodiments don't show it. The summary of the invention never explains it. That construction cannot be correct. But we're not here to talk about enablement and written description. If we get remanded, that will be first and foremost. Just out of curiosity, doesn't figure 6 or figure 5 actually? I think it's figure 5. Figure 5 or figure 6. Figure 5 actually discloses it because it shows an illumination surface 532 and an attachment surface 530 and it shows that they are attached to each other. So while the spec may not use those words, doesn't that figure demonstrate those two surfaces being attached to each other? They are two different sides of the housing. They are not attached to each other by the fastening mechanism, which is what is required in Claim 12. Fastening mechanism is 534. I see. And the court ultimately construed fastening mechanism to mean fastener. So we expect, and Your Honor is on the right course, we expect if we are remanded that Blackburn is going to take the position that those two vertical lines, which are the sidewalls of the housing, are the fastening mechanism. But there is clearly no support for that, and the figure 534 is shown as double-sided tape, and in the specification there is a description of screws, magnets, and double-sided tape. So the two sidewalls of a four-walled housing cannot be the fastening mechanism in and of themselves based upon the description. But moreover, the court ultimately ruled below that fastening mechanism means fastener. And we heard some argument today about what a fastener is, and it's pretty clear what a fastener would be, and sidewalls of the housing would not be considered fastener. But that's not today's issue. But that is where we're headed if we go back on remand. And that is why, as I said earlier, we are not advocating rewriting the fastening mechanism element. This patent may not disclose an illumination surface and an attachment surface that are joined together by a fastener. This isn't particularly complex technology. I mean, any guy that works at Home Depot probably has a pretty good mastery of this stuff. Wouldn't pretty much any skilled artisan know how you could join two surfaces together with a fastener? I mean, I guess you're saying this is where we're going if we go back, and I'm saying I don't think you have a prayer of winning that argument because I think any skilled artisan would probably know that you could have two surfaces that could be joined together with a fastener, whether the fastener is a screw, a bolt, heck, binder clips. I mean, just about anything could hold these two surfaces together. And so, yes, they don't disclose an embodiment that is configured that way, but if a skilled artisan would readily know how to do it, I don't see how it would create a 112 problem. I submit, to go to your issue of how we win, how we win is it has to be secured with a ballast cover. Oh, I see. So you don't want to go back because probably it's tough to win on that other argument. All right. As far as I'm trying to think from my notes what some of the other questions were, the Edison bulb example to me is a red herring. We all as lawyers in the court have heard many different examples that have brought up, but this is not the Edison bulb. Claim 12 talks about several specific things that need to be included in that claim. And for those things to be a part of the claim, they have to be enabled and they have to be supported by the written description. And we contend that the only thing that is enabled and the only thing supported in the written description that gives retrofit meaning is what we have said before, which is that the attachment surface is the thing that gets attached to the ballast cover to make this device function. I don't understand when you say it's the only thing that gives retrofit meaning. Everybody agreed that that part of the preamble was a limitation, namely that this was a fixture that this was going to be for retrofit with an existing light fixture. This particular embodiment or claim apparatus was going to be working with a retrofit light fixture. Why doesn't, I don't understand, I'm confused. That has meaning in and of itself, regardless of whether you articulate the method of attaching this fixture to the retrofit light fixture. That is an independent element which must be met, regardless of whether you say how it's going to be connected to each other. We submit, Your Honor, that Blackbird is correct, and I believe the court mentioned earlier that there is nothing that requires a claim to contain all the embodiments and all the ways of doing something. But there is an absolute requirement that when something is claimed, that that thing has to be present for infringement, that thing has to be present for written description, that thing has to be present for enablement. Here, the retrofit thing are the two embodiments that I described earlier. One where the ballast cover is already a part of the claimed invention, an existing ballast cover is removed and the entire invention is put on the existing fixture. The second, which is claim 12, is the ballast cover remains in place and the claimed invention is somehow secured to the existing lighting fixture, the retrofit. How that is done is by the attachment surface being secured to the ballast cover. That's the problem. The problem is you don't just want to limit this claim to a particular embodiment that has to be utilized with an existing light fixture and a ballast cover. You want to limit this claim to an existing embodiment that has to be used with a retrofit light fixture with a ballast cover and joined to that in a particular way. That's what you want to do. We are not saying it has to be joined in a particular way in terms of the way the fastener has to be used or what type of fastener has to be used. I don't understand. Just out of curiosity, what do you all do? Do you not have a ballast cover? This is a very interesting case in that regard. I would not have brought it up, but I'm very glad that you asked. What we do is we sell tube-shaped light bulbs, fluorescent light bulbs. Like my piano bulb. Got it. That are configured to take out an existing bulb and you put in our bulbs. We don't do anything with ballast covers. But your bulb has connectors on both ends. Correct. So it's not like my piano light bulb. Well, we have connectors, the two-pin connectors. No, the current goes through. Got it. All right, keep going. So you have this bulb. You take out the old bulbs. I mean, this courtroom does not have the tube bulbs, but you take out the tube bulbs. Sorry, but those tube bulbs are not great on your eyes. But that's what our clients sell. They're the ones that have LEDs inside of them. So our tubes have LEDs inside. Right. But we're getting on to the non-infringement and infringement arguments. No, but I want to know. I want to know how in the world you have a ballast cover. We don't. You don't have a ballast cover at all. We don't remove the ballast cover. We say we don't attach to the ballast cover because we just plug in. No, but do you have the ballast cover? The existing fixture does have a ballast cover, yes. Our products do not. Our products are light bulbs. Do you have a housing having an attachment surface? We don't believe we have a housing. We don't believe we have a housing. You don't have a housing? Well, if you don't have any of that stuff, I don't see what the problem is, why you're so hung up on whether or not the attachment surface fixture or fastener mechanism is pulled into this claim or not through the words attachment means. It seems like what you're describing, you've got a multitude of other non-infringement arguments. We do, Your Honor, but we were, as I say, we were constrained by what this patent says. We don't believe that this amendment makes any sense. We don't believe it's enabled, but we had to live in the Markman context with what this patent says. We were not able to present non-infringement arguments. When you say you don't believe it's enabled, I mean, how can you say that? I mean, I hear you, and don't answer it, because I don't want to lock you into something he's going to quote below or if this goes below, but I mean, I don't know how you can say that. It says a fastening mechanism for securing two sides of a surface to each other. It doesn't seem that complex as far as enablement goes in light of the simplicity of the technology, even though there may not be an embodiment disclosed that does that. So I don't answer. That's not even a question. Keep going. Say whatever you want. All right. Well, I feel compelled to talk a little bit more about the amendment because I want to make clear, I think I've made clear, that we are not asking to reinsert what was taken out, but what I also want to make clear is that the cases of laryngeal mask and decisioning inform what should be done here. In laryngeal mask and decisioning, there were claim elements that were removed and people were asking to put them back in, and the court said, of course, we're not going to do that. But in both cases, the court did not stop right there. The court said, we still need to look at the specification. We still need to determine what this claim means. And in decisioning, in particular, a per curiam decision, the court said, okay, the word kiosk was taken out. There's nothing that requires this method or this apparatus, I'm sorry, for applying for credit, credit cards. There's nothing about it that requires it being a kiosk. But when they went to determine what the word remote interface meant, the court said, well, it can't be a person's personal computer because that's not out and publicly available like a kiosk would have been. They didn't say you put the word kiosk back in the claim. But what the court said is, you look to what the invention was. And here the invention is not other than what we've described. The invention is attaching this lighting apparatus to the ballast cover of an existing fixture. Thank you. Thank you, Your Honor. So briefly, Your Honor, as to what these bulbs are and how they fit into a light fixture, because I think it's helpful and informs the claim construction issue. So these are retrofit LED bulbs, retrofit in the sense that they replace or are for retrofit with fluorescent light fixtures. That is the retrofit nature. So a fluorescent light fixture is something with a ballast, and the ballast is the electronic component that controls the current going to a fluorescent bulb. And the ballast cover is the aesthetic cover over that component. And that's what renders these bulbs retrofit. It is not how they attach. It is just that they are bulbs for use with a fluorescent lighting fixture. That is the retrofit nature of them. I would point out that almost all defendant's products, and this is not in the record, and I won't spend time with it, but are called retrofit LED bulbs. And that is what this technology is about. In terms of the summary of the invention. You're upgrading fluorescent bulbs with LED bulbs because they save electricity, they're better on the eyes, and that's what this whole retrofit, that's the purpose of this invention basically. Correct. The purpose of the invention was recited in Claim 12, yes. You're not replacing the fluorescent bulbs, right? You're adding to them. The embodiments recited in the specification add to them. Claim 12, I don't think, requires that they be removed or that they continue to be there. It recites the lighting apparatus for retrofit. The LED bulbs are for safety purposes or lower light, lower power. But mainly for safety, correct? If the power goes out, these bulbs come on. That's one of the embodiments recited in the specification. Wait a minute. Retrofitting an existing light fixture. An existing light fixture is only going to have so many holes for bulbs, right? Yes. So you've got to be talking about taking some of the fluorescent bulbs away and installing LED bulbs in place of them. I think generally you would be talking about that, but I don't think the claim is written to require that or to address that. Well, there's nothing in the claim that suggests we're going to add whole new housing fixtures for additional lights, and that would seem inconsistent with the word retrofit. Retrofit, doesn't it imply that you're taking away something and putting something new in? I don't think, I wouldn't agree that it necessarily implies that. I think the agreed construction of the preamble, which I think is a relevant limitation for this, is that the bulb is for installation in a lighting fixture that has a ballast cover. I think something can be for installation in it in many ways. For installation in an existing lighting fixture. An existing lighting fixture has a predetermined number of slots for light bulbs to be inserted into, correct? Correct. Go ahead, move on. I take your point, but my point is I don't think that's a limitation of the claim. There's no requirement that the user remove the bulbs to infringe this claim. I think this is an apparatus claim that is infringed by the limitations. Well, an apparatus claim is infringed by the capability, so you don't have to actually perform the method to get infringement. Correct, I do not disagree. Finally, one final point. My colleague pointed out that even though perhaps not always the summary of the invention should control it, it should control here because it precisely matches the claim. The language set forth in there precisely matches the claim, but that's not the case. After the amendment, the language set forth in the relevant portion of the summary of the invention session does not match the claim because the claim does not recite a fastening mechanism for securing the attachment surface of the lighting apparatus to the ballast cover. I think that's what makes the amendment so relevant here. It would be highly inappropriate to read in that limitation to the claim when it has been specifically removed by amendment. That's what I think makes that portion of the summary of the invention section non-limiting with respect to Claim 12. Thank you. Thank you.